IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT<br>OPPORTUNITY COMMISSION, | )<br>)<br>) | |
| Plaintiff, | ) | |
| vs. | )<br>) | Case No. 04-0076-CV-W-GAF |
| Wal-Mart STORES, INC., | )<br>)<br>) | |
| Defendant. | ) | |

## ORDER

Presently before the Court is Wal-Mart Stores, Inc. ("Wal-Mart")'s motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure (Doc. 126). On January 20, 2004, Plaintiff Equal Employment Opportunity Commission ("EEOC") filed this lawsuit on behalf of Steve E. Bradley ("Bradley") pursuant to Title I of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12117(a) and the Civil Rights Act of 1991, 42 U.S.C. § 1981a, alleging that Wal-Mart engaged in unlawful employment practices by unlawfully failing to hire Bradley based on his disability. Wal-Mart has moved for summary judgment claiming that the EEOC's claims fail as a matter of law. The EEOC has opposed this motion. For the following reasons, Wal-Mart's motion for summary judgment is GRANTED.

**I.      Facts**

Bradley was born prematurely with cerebral palsy and has had spastic diplegia with lesser problems with his hands since birth. During the earliest years of his childhood, Bradley crawled on his arms and knees leading to dislocations of the elbows and chronically painful knees throughout his life. He has had

1

numerous surgeries to improve the function of his joints, tendons, and spasticity, which has improved his mobility, but nevertheless Bradley has developed an intolerance to the performance of nonstop standing and walking. As such, he is dependant upon the use of crutches for standing and walking. Bradley's legs are incapable of supporting him without help from his arms and, in order to move about, he must use both arms.

Because of his infirmities, Bradley utilizes a wheelchair if he is required to walk long distances. His need for a wheelchair arose because his knees have progressively degenerated throughout his life. Bradley has been using the wheelchair in some capacity for the last nine years. Additionally, his condition does not allow him to stand for long periods of time and, if he is required to do so, he must kneel instead. Although he is capable of climbing stairs, Bradley's condition only allows him to do so at a slow pace. He avoids working at heights and has admitted that he would not apply for job that would require him to climb ladders on a continuous basis.

From June of 1998 to June of 2001, Bradley was employed as a proofreader for Banta Publishing, Inc. ("Banta") in Richmond, Missouri. Banta was aware of Bradley's disability and he used his wheelchair everyday he was employed there. In order to accommodate Bradley's use of a wheelchair, Banta installed automatic doors in the areas Bradley was required to enter and exit. During this time, in June of 2000, Bradley was also employed for one day as a cashier at Texaco in Richmond, Missouri. During his only day of employment at Texaco, Bradley used crutches. During his shift, Bradley quit voluntarily after his first day of work at Texaco. According to Bradley, the reason he quit Texaco was because the area in which he was working was not wheelchair accessible. In May of 2001, Bradley gave two-weeks notice of resignation and resigned from Banta citing "fuel expenses" as his reason for leaving. Bradley also has

Case 4:04-cv-00076-GAF    Document 143    Filed 08/12/05    Page 2 of 14

worked at Shirkley's Leisure acres, from June to August of 2001, the Richmond Police Department, from August to October of 2001, and attended a training course at Station Casino.

While he was employed at Banta, in July of 2000, Bradley submitted an application for "Greeter/Customer Assistant" position at a Wal-Mart store in Richmond. At the time of the application, the Richmond store was not a Wal-Mart Supercenter. Bradley has stated that he was seeking part-time employment in addition to his full-time employment with Banta. Wal-Mart did not hire Bradley in July of 2000.

On February 28, 2001, Bradley submitted an application for an "Associate/Any Department" position at the Richmond store. As before, when Bradley submitted this second application, he was employed at Banta. According to Bradley, at the time of this application, he was seeking full-time employment and intended to quit Banta if hired by Wal-Mart. Between January and March of 2001, the Richmond Wal-Mart was making a transition into a Supercenter. As a result, the Richmond Store received hundreds of applications, both by mail and in person, during this time period. During the hiring phase of the Richmond Store's transition, a hiring committee reviewed applications, checked references, and contacted applicants for interviews. The committee screened applications based upon previous work history and availability.

The store manager of the Richmond Wal-Mart is David Penny and he is ultimately responsible for all final decisions regarding hiring, firing, and discipline of associates. During the hiring phase of the Richmond Store's transition to a SuperCenter, however, Personnel Manager, Janet Dougherty ("Daugherty") was designated as the final decision maker for hiring decisions at the SuperCenter. The Richmond Store received hundreds of applications, both by mail and in person, during the transition period.

3

A hiring committee, comprising of Wal-Mart employees who had completed their management training, but had yet to assume their positions as managers, was created to assist in conducting interviews and reviewing applications. The committee screened applications initially on the basis of previous work history and availability. The nature of the SuperCenter, which was to be open 24 hours a day, made availability a priority early in the screening process. If an application made it past the initial screening process, a member of the committee would schedule an interview. The committee member who interviewed the applicant would not necessarily be the same member who screened the application. After the initial interview, an applicant who was thought to be a potential hire would have their application placed in a pile so that the references given could be checked. Based upon recommendations of the member conducting the initial interview, Daugherty would then make a decision as to whether to conduct a second interview. If the interviewer felt that the applicant did not warrant further consideration for employment, the application was then placed in a "dead pile" and no longer considered.

The application submitted by Bradley followed this procedure and Bradley received an interview. It is unknown who initially reviewed Bradley's application or who contacted Bradley regarding his interview. Bradley, however, was interviewed by Maxine Hicks, who was a Wal-Mart employee and a member of the hiring committee during the hiring phase of the Richmond Store's transition into a SuperCenter. During the interview, Bradley used his wheelchair. According to Bradley, Hick's questioned him about his ability to handle the work from his wheelchair and said that the Greeter Position would be best suited for him. Bradley did not feel that he was treated wrongly or discriminated against during the interview with Hicks.

Following Bradley's initial interview, Daugherty reviewed his application for availability and work

4

experience. Bradley's application stated that he was only available to work from 4:30 p.m. to 10:00 p.m. each day and listed no retail experience. Bradley was not offered a second interview and was not hired by Wal-Mart for any position. Wal-Mart stated that it did not hire Bradley because of his lack of availability and his lack previous experience in retail and at a register. It was also stated that job history played a role in the decision not to hire him. Additionally, Daugherty has noted that Bradley had also worked at several jobs which he did not list on his application.

Bradley first contacted the EEOC after seeing a news report about a Missouri man who had filed a disability discrimination claim against Wal-Mart. It was Bradley's intent at the time to offer his services as a possible character witness for the EEOC. After speaking with counsel for the EEOC, Bradley was directed to EEOC investigator Michael Katz ("Katz"). In the usual course of an EEOC claim, the individual is given an intake questionnaire on which the EEOC will make a determination on whether to proceed. Bradley had neither been given nor completed the questionnaire when he was contacted by Katz. Also, Katz was unaware that Bradley had no intention of filing a case on his own when he initially contacted the EEOC.

On September 25, 2001 Katz interviewed Bradley by phone and, based upon that conversation, drafted a Charge of Discrimination to be mailed to Bradley. The Charge of Discrimination alleged that Bradley had been denied employment by Wal-Mart on the basis of his disability. Bradley signed the Charge. Following an investigation into Bradley's charge, the EEOC filed this lawsuit on Bradley's behalf.

**II.      Standard**

Rule 56(c), Federal Rules of Civil Procedure, provides that summary judgment shall be rendered if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits,

if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, it is the court's obligation to view the facts in the light most favorable to the adverse party and to allow the adverse party the benefit of all reasonable inferences to be drawn from the evidence. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Inland Oil and Transport Co. v. United States, 600 F.2d 725, 727-28 (8th Cir. 1979).

If there is no genuine issue about any material fact, summary judgment is proper because it avoids needless and costly litigation and promotes judicial efficiency. Roberts v. Browning, 610 F.2d 528, 531 (8th Cir. 1979); United States v. Porter, 581 F.2d 698, 703 (8th Cir. 1978). The summary judgment procedure is not a "disfavored procedural shortcut." Rather, it is "an integral part of the Federal Rules as a whole." Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986); see also City of Mt. Pleasant v. Associated Elec. Coop., Inc., 838 F.2d 268, 273 (8th Cir. 1988). Summary judgment is appropriate against a party who fails to make a showing sufficient to establish that there is a genuine issue for trial about an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 324.

At the summary judgment stage the judge's function is not to weigh the credibility of the evidence, but rather to determine whether a genuine issue of material fact exists. Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2510 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. The evidence favoring the nonmoving party must be more than "merely colorable." Id. at 2511. When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show there is some metaphysical doubt as to the

6

material facts. Matsushita Elec. Indus. Co. v. Zenith Radio, 106 S.Ct. 1348, 1356 (1986) (footnote omitted).

**III.    Analysis**

In its motion, Wal-Mart seeks summary judgment on all of EEOC's claims for discrimination. Wal-Mart contends that EEOC is unable to establish a prima facie case of discrimination, cannot prove that Wal-Mart's proffered legitimate nondiscriminatory reasons for not hiring Bradley are pretext for discrimination, and cannot overcome Wal-Mart's affirmative defense that Bradley poses a direct threat of harm to himself and others. EEOC contends that all of Wal-Mart's arguments fail and that the motion for summary judgment should be denied.

A.    Discrimination based on disability

Claims of discrimination under the ADA are analyzed under the well-worn McDonnell Douglas burden shifting framework. Fenney v. Dakota, Minn. & E. R.R. Co., 327 F.3d 707, 712 (8th Cir. 2003). Under this structure, the plaintiff must first establish a prima facie case of discrimination based on disability. Fenney, 327 F.3d at 712. Once the plaintiff makes out his prima facie case, a presumption of discrimination arises and the burden of production shifts to the defendant to put forth evidence that the defendant's actions were based on legitimate, non-discriminatory reasons. Kiel v. Select Artificials, Inc., 169 F.3d 1131, 1135 (8th Cir. 1999). If the defendant proffers such evidence, the burden shifts to the plaintiff to produce evidence demonstrating that the defendant's stated reasons are pretexts for discrimination. Kiel, 169 F.3d at 1135.

In order to make out a prima facie case of discrimination under the ADA, the plaintiff must present evidence tending to show three things. Lowery v. Hazelwood Sch. Dist., 244 F.3d 654, 657 (8th Cir.

7

2001). First, the plaintiff must show that he is disabled within the meaning of the ADA. Lowery, 244 F.3d at 657. Second, the plaintiff must show that he is qualified to perform the essential functions of his position. Id. Third, the plaintiff must put forth evidence that he suffered an adverse employment action under circumstances that would give rise to an inference of discrimination. Id. In this case, there is no dispute as to the first and third elements of the prima facie case. Wal-Mart has conceded that, due to his cerebral palsy, Bradley is disabled within the meaning of the ADA. Additionally, Wal-Mart does not dispute that Bradley suffered an adverse employment action in that he was not hired for a job for which he applied. Consequently, the only issue for this Court to decide with regard to the EEOC's prima facie case for discrimination based on disability is whether Bradley is qualified to perform the essential functions of the position.

As to this second requirement of the prima facie case for disability discrimination, the EEOC must prove that Bradley is a "qualified individual" by putting forth evidence that he would be able to perform the essential functions of the position with or without reasonable accommodation. Mole v. Buckhorn Rubber Prods., Inc., 165 F.3d 1212, 1216 (8th Cir. 1999). An individual who is not a "qualified individual" at the time of the adverse employment action is "not under the protective umbrella of the ADA." Browning v. Liberty Mutual Ins. Co., 178 F.3d 1043, 1048-49 (8th Cir. 1999). If an employer argues that the individual cannot perform the essential functions, it must put forth evidence establishing those functions. Maziarka v. Mills Fleet Farm, Inc., 245 F.3d 675, 680 (8th Cir. 2001)(citing Benson v. Northwest Airlines, Inc., 62 F.3d 1108, 1113 (8th Cir. 1995)). The ultimate burden of proving that an individual is qualified within the meaning of the ADA, however, remains on the plaintiff. Id.

The First issue that this Court must address is the scope of EEOC's claims of discrimination with

8

regard to Bradley's case. By order of this Court, the scope of these proceedings to Greeter, Cashier, Salesfloor Associate, and Optician (Non-Certified Vision Associate). *See* Transcript of Telephone Conference on August 22, 2004. In its opposition to summary judgment, EEOC asserts that while it "contends that Steve Bradley is also fully capable of performing the essential functions of the salesfloor associate, non-certified vision center associate, and stocker positions, for the purpose of this motion [the EEOC] is limiting [its] claims to the people greeter and cashier jobs." (Doc. 131 at p. 84 note 2).

The Court should not have to note that the purpose of this motion is to ascertain whether there exists a general issue of material fact with regard the claims now at issue. Moreover, notwithstanding the EEOC's present contentions, the burden of proving that a person is a "qualified individual" covered by the ADA falls squarely upon the plaintiff. Maziarka, 245 F.3d at 680. Thus, the burden to demonstrate the existence of a genuine issue of fact rests upon the EEOC. Although Wal-Mart has met its burden of establishing the essential functions of all of the jobs within the scope of discovery of this case, the EEOC has put forth proof regarding only two of them: Greeter and Cashier. The EEOC's mere contention regarding Bradley's ability to perform to perform the positions of Salesfloor Associate, Non-Certified Vision Associate, and Stocker falls far short of its burden of establishing a prima facie case with regard to those issues. In the context of summary judgment, the nonmoving party may not merely rest upon allegations or denials in its pleadings, but is required to set forth specific facts, by affidavits or otherwise, that demonstrate that there is a genuine issue of fact for trial. Ghane v. West, 148 F.3d 979, 981 (8th Cir. 1998). As a result, this case and, therefore, this Court's inquiry will be limited to the Wal-Mart positions of Greeter and Cashier.

As stated earlier, in order to challenge the second element of the prima facie case, that the

9

individual is a "qualified", the employer must establish the essential functions of the position. Id. An essential function may be established by evidence that includes: (1) the employer's judgment as to which functions are essential; (2) written job descriptions prepared before advertising or interviewing applicants for the job; (3) the amount of time spent on the job performing the function; (4) the consequences of not requiring the incumbent to perform the function; and (5) the current work experience of incumbents in similar jobs. Id. at 680-81. Wal-Mart has produced job descriptions of both the Greeter and Cashier positions which the EEOC has recognized as providing a list of the essential functions of those two jobs. *See* Plaintiff's Suggestions Opposition to Summary Judgment (Doc. 131 at pp. 85-87).

### i. *Greeter Position*

Based upon the job description provided by Wal-Mart, the essential functions of the People Greeter Position are to: constantly greet and provide carts to customers entering and exiting the store; frequently lift and deactivate items weighing up to 10 pounds; frequently deactivate and record missing items with assigned tools; pick up items such as small coins; understand and effectively follow all company procedures, company policies, and laws on all restricted items; identify and promptly respond to returned items and inventory control concerns in accordance with company procedures; resolve customer concerns effectively; visually verify small print, items to pricing labels, shelf labels and other store signing; and communicate effectively with customers and other Wal-Mart associates. *See* Ex. 21 to Plaintiff's Suggestions Opposition to Summary Judgment, Wal-Mart People Greeter Job Description.

In order to establish the second element of a prima facie case for discrimination based upon disability, a plaintiff is required to establish that he is qualified to perform the job. Burchett v. Target Corp., 340 F.3d 510, 517 (8th Cir. 2003). In order to determine whether an individual is qualified to perform the

10

essential functions of a job requires a two-step inquiry. Cravens v. Blue Cross & Blue Shield of Kansas City, 214 F.3d 1011, 1016 (8th Cir. 2000). The first step requires that the plaintiff show he meets the necessary prerequisites for the job and can perform the essential functions, with or without reasonable accommodation. Burchett, 340 F.3d at 517. If the plaintiff is unable to perform the essential functions of a position without accommodation, he must make a facial showing not only that accommodation is possible, but also that the accommodation will allow him to perform the essential functions of the job. Id.

In support of its contention that Bradley is capable to performing the essential functions of the Greeter Position, the EEOC directs the Court to a single statement by Wal-Mart manager Maxine Hicks. In her deposition, Hicks stated generally that a person in a wheelchair could be capable of performing the essential functions of the people greeter job. (Hicks Depo. at p. 118:5-9). According to the EEOC, this statement is sufficient to establish a prima facie case. Wal-Mart argues, however, that the statement made by Hicks was made in response to a general question regarding whether a person in a wheelchair could perform the job duties of the Greeter Position. This Court agrees. The question posed to Hicks was ". . .would a person in a wheelchair be able to perform the job duties of a people greeter?" (Hicks Depo. at p. 118:7-8). It was in response to this question that Hicks related that she thought that a person in a wheelchair could perform the Greeter Position. (Hicks Depo. at p. 118:9). Based upon this statement, the EEOC leaps to the conclusion that it has established its prima facie case.

This Court, however, remains unsatisfied that this is sufficient proof of Bradley's ability to perform the essential functions of the Greeter Position. Even when taking the facts in the light most favorable to it, the EEOC has failed to meet its burden in establishing that Bradley is able to perform the essential functions of the position in his wheelchair. Clearly, the fact that a person in a wheelchair is capable of performing

11

the essential functions of the Greeter Position does not demonstrate that anyone, regardless of other limitations or circumstances could perform the job from a wheelchair. Bradley is an individual with cerebral palsy and suffers from spastic diplegia in his hands. The EEOC attempts to bolster its argument that he is qualified to perform the essential functions of the Greeter Position by splicing portions of Wal-Mart's expert testimony regarding Bradley's capabilities while using his wheelchair. The EEOC points to testimony regarding Bradley's upper body strength and balance which enable him to move items weighing 50 pounds using his wheelchair and bend easily to pick items off of the floor. These examples, however, are single tasks that are not sufficient to create an issue of fact for trial on Bradley's ability to perform the essential functions of the position for an entire shift using only his wheelchair.

In order to determine whether a disabled individual is qualified for the purposes of supporting a claim for disability discrimination, there must be a factual determination between the abilities of the individual, with or without reasonable accommodation, and the essential functions of the job at issue. By blurring the lines between prima facie case and reasonable accommodation, the EEOC attempts to shift their burden to Wal-Mart. The Court, however, must be ever mindful of where the burden of proof lies. A plaintiff can shift the burden of production to the employer to demonstrate that it is unable tp accommodation the employee, if the plaintiff can make a facial showing that an accommodation is possible. Benson v. Northwest Airlines, Inc., 62 F.3d 1108, 1112 (8th Cir. 1995).

Additionally, the plaintiff must demonstrate that the accommodation will enable the employee to perform the essential functions of the job. Burchett, 340 F.3d at 517. The EEOC is unable to shift the burden of production, however, because it has not put forth sufficient evidence regarding Bradley's abilities with the use of his wheelchair to demonstrate that he is able perform all of the essential functions required

by the Greeter position solely with his wheelchair. As stated above, the burden of establishing a prima facie case for disability discrimination falls squarely upon the plaintiff. Maziarka, 245 F.3d at 680. This Court finds that the EEOC has not met its burden.

### ii. *Cashier Position*

The EEOC's case for discriminatory failure to hire Bradley as a Cashier suffers from the same defects as its claims regarding the Greeter Position. Again, Wal-Mart provided the essential functions of the Cashier position in a job description, which was adopted by EEOC in opposing Wal-Mart's motion. As essential functions, a Cashier at Wal-Mart is required to: constantly scan, deactivate, and bag items of varying sizes; continuously lift, scan, deactivate, and bag items weighing up to 10 pounds; frequently lift, scan, deactivate, and bag items weighing greater than ten pounds; accurately and effectively make and count back change; understand and effectively follow all company procedures, company policies, an laws on all restricted items, tax exempt sales, and government issued financial assistance; resolve customer concerns effectively; pick up items, such as small coins and change the receipt paper in the register printer; visually verify small print, items to pricing labels; shelf labels and other store signing, customer identification and payment to each other and to the register to display; and communicate effectively with customers and other Wal-Mart associates. *See* Ex. 22 to Plaintiff's Suggestions Opposition to Summary Judgment, Wal-Mart Cashier Job Description.

Once again, the EEOC attempts to use a generalization regarding the ability of qualifications of a person in a wheelchair to establish its prima facie case. The EEOC directs the Court to the deposition of Wal-Mart corporate representative, Janet Daugherty, in attempt to establish its prima facie case for disability discrimination against Bradley. As with the statement from Hicks' deposition, Daugherty's

13

statements were general in nature with regard to the ability of an individual in wheelchair to perform the essential functions of the cashier position with reasonable accommodation. What the EEOC has failed to do, however, is put forth sufficient evidence demonstrating that Bradley, the individual in question, is capable of performing all of the essential functions of the Cashier position using only his wheelchair. While the EEOC does suggest that certain accommodations could be made, it offers no evidence that Bradley could even perform the duties required of a Cashier even if he were accommodated as such. Thus, the EEOC has failed to present sufficient evidence to satisfy his prima facie case.

## IV. Conclusion

For the foregoing reasons summary judgment on the EEOC's claim of discrimination in violation of the ADA is appropriate. As such, Wal-Mart's motion for summary judgment is GRANTED.

**IT IS SO ORDERED.**

/s/ Gary A. Fenner
GARY A. FENNER, JUDGE
United States District Court

DATED: **August 12, 2005**