IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT ) | | |
| OPPORTUNITY COMMISSION, ) | | |
| ) | | |
| **Plaintiff,** ) | | |
| ) | | |
| ) | | |
| vs. ) | | Case No. 04-00076-CV-W-GAF |
| ) | | |
| WAL-MART STORES, INC., ) | | |
| ) | | |
| ) | | |
| **Defendant.** ) | | |

## ORDER

Presently before the Court is a Motion for Reconsideration filed by the Plaintiff, the Equal Employment Opportunity Commission ("The EEOC"). (Doc. #145). The EEOC asks this Court to reconsider its Order granting summary judgment in favor of Defendant, Wal-Mart Stores, Inc. ("Wal-Mart.") (Doc. #143). The EEOC filed this lawsuit on behalf of Steve E. Bradley ("Bradley") pursuant to Title I of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12117(a), and the Civil Rights Act of 1991, 42 U.S.C. § 1981, alleging that Wal-Mart engaged in unlawful hiring practices by failing to hire Bradley based on his disability. (Doc. #16).

This Court granted summary judgment on August 12, 2005, finding that the EEOC failed to present evidence in support of an essential element of its prima facie case. (Doc. #143). Specifically, this Court found that the EEOC failed to put forth evidence which tended to show that Bradley was qualified to perform the essential functions of the positions for which he applied. Id. In its present Motion, the EEOC "seeks to clarify the factual record with respect to Bradley's ability to perform the essential functions of the

people greeter and cashier jobs." (Doc. #145). For the reasons set forth below, the EEOC's Motion for Reconsideration is DENIED.

## **DISCUSSION**

### **I.     Facts**

This case arose when Bradley applied for and was denied a job at a Wal-Mart store in Richmond, Missouri in February of 2001.[1] Bradley was born prematurely with cerebral palsy and has had spastic diplegia with lesser problems with his hands since birth. During the earliest years of his childhood, Bradley crawled on his arms and knees leading to dislocations of the elbows and chronically painful knees throughout his life. He has had numerous surgeries to improve the function of his joints, tendons, and spasticity, which has improved his mobility, but nevertheless Bradley has developed an intolerance to the performance of nonstop standing and walking. As such, he is dependant upon the use of crutches for standing and walking. Bradley's legs are incapable of supporting him without help from his arms and, in order to move about, he must use both arms.

Because of his infirmities, Bradley uses a wheelchair if he is required to walk long distances. His need for a wheelchair arose because his knees have progressively degenerated throughout his life. Bradley has been using the wheelchair in some capacity for the last nine years. Additionally, his condition does not allow him to stand for long periods of time and, if he is required to do so, he must kneel instead. Although he is capable of climbing stairs, Bradley's condition only allows him to do so at a slow pace.

---

[1] Unless otherwise noted, these facts are taken from Wal-Mart's Suggestions in Support of its Motion for Summary Judgment and are uncontroverted by the EEOC.

2

From 1995 to 1997, Bradley was employed by Ray County Fellowship as an administrator. From June of 1998 to June of 2001, Bradley was employed as a proofreader for Banta Publishing, Inc. ("Banta") in Richmond, Missouri. Bradley used his wheelchair everyday he was employed at Banta. In June of 2000, Bradley was also employed for one day as a cashier at Texaco in Richmond, Missouri. During his only day of employment at Texaco, Bradley used crutches. Bradley quit voluntarily after his first day of work at Texaco. In May of 2001, Bradley gave two-weeks notice of resignation and resigned from Banta citing "fuel expenses" as his reason for leaving.

On February 28, 2001, Bradley submitted an application for an "Associate/Any Department" position at the Richmond store. According to Bradley, at the time of this application, he was seeking full-time employment and intended to quit Banta if hired by Wal-Mart. Between January and March of 2001, the Richmond Wal-Mart was making a transition into a SuperCenter. The store manager of the Richmond Wal-Mart is David Penny and he is ultimately responsible for all final decisions regarding hiring, firing, and discipline of associates. During the hiring phase of the Richmond Store's transition to a SuperCenter, however, Personnel Manager, Janet Daugherty ("Daugherty") was designated as the final decision maker for hiring decisions at the SuperCenter.

The Richmond Store received hundreds of applications, both by mail and in person, during the transition period. A hiring committee, comprised of Wal-Mart employees who had completed their management training but had yet to assume their positions as managers, was created to assist in reviewing applications, conducting interviews, and checking references. The committee screened applications based upon previous work history and availability. The nature of the SuperCenter, which was to be open 24 hours a day, made availability a priority early in the screening process. In making hiring decisions, the

3

committee took into account scheduling restrictions based on high school and college class schedules if the applicant was otherwise available.

If an application made it past the initial screening process, a member of the committee would schedule an interview. The committee member who interviewed the applicant would not necessarily be the same member who screened the application. After the initial interview, an applicant who was thought to be a potential hire would have his or her application placed in a pile so that references could be checked. If the interviewer felt that the applicant did not warrant further consideration for employment, the application was then placed in a "dead pile" and no longer considered.

The application submitted by Bradley followed this procedure and Bradley received an interview. It is unknown who initially reviewed Bradley's application or who contacted Bradley regarding his interview. Bradley, however, was interviewed by Maxine Hicks ("Hicks"), who was a Wal-Mart employee and a member of the hiring committee during the hiring phase of the Richmond store's transition into a SuperCenter. During the interview, Bradley used his wheelchair. According to Bradley, Hick's questioned him about his ability to handle the work from his wheelchair and said that the Greeter Position would be best suited for him. Bradley did not feel that he was treated wrongly or discriminated against during the interview with Hicks.

Following Bradley's initial interview, Daugherty reviewed his application for availability and work experience. The first page of Bradley's application stated that he was only available to work from 4:30 p.m. to 10:00 p.m. each day. On the back page, Bradley wrote that he was available from 4:00 p.m. until 10:00 p.m each day. Bradley listed no cashier or retail experience. Bradley was not offered a second interview and was not hired by Wal-Mart for any position. Wal-Mart stated that it did not hire Bradley

4

because of his lack of availability and his lack of previous experience in retail and at a register. Wal-Mart also stated that job history played a role in the decision not to hire him. Additionally, Daugherty noted that Bradley had also worked at several jobs which he did not list on his application.

Bradley listed only Banta and Ray County fellowship as his employment history on his application. On his resume, Bradley stated that his job duties at Banta included: page layout, color combinations, correlation between text and photos, compare customer supplied materials to pre-press proofs. Bradley stated his duties at Ray County fellowship included: in-house senior activities, coordinate Meals on Wheels program, organize elderly transportation, community betterment programs, file government reports.

Bradley first contacted the EEOC after seeing a news report about a Missouri man who had filed a disability discrimination claim against Wal-Mart. It was Bradley's intent at the time to offer his services as a possible character witness for the EEOC. After speaking with counsel for the EEOC, Bradley was directed to EEOC investigator Michael Katz ("Katz"). In the usual course of an EEOC claim, the individual is given an intake questionnaire on which the EEOC will make a determination on whether to proceed. Bradley had neither been given nor completed the questionnaire when he was contacted by Katz. Also, Katz was unaware that Bradley had no intention of filing a case on his own when he initially contacted the EEOC.

On September 25, 2001 Katz interviewed Bradley by phone and, based upon that conversation, drafted a Charge of Discrimination to be mailed to Bradley. The Charge of Discrimination alleged that Bradley had been denied employment by Wal-Mart on the basis of his disability. Bradley signed the Charge. Following an investigation into Bradley's charge, the EEOC filed this lawsuit on Bradley's behalf.

This Court granted summary judgment in favor of Wal-Mart because Bradley failed to present evidence sufficient to create a genuine issue of material fact regarding whether he was qualified to perform the essential functions of the jobs for which he applied. (Doc. #143). The EEOC argues that, in granting Wal-Mart's motion for summary judgment, the Court made statements that reflect a misunderstanding of the record. (Doc. #146). First, the EEOC's Motion "seeks to clarify how Bradley's condition affects his manual dexterity," specifically as it relates to the Court's Order granting summary judgment, which stated that Bradley "suffers from spastic diplegia in his hands.'" (Doc. #145). The EEOC also "seeks to clarify the factual record with respect to Bradley's ability to perform the essential functions of the people greeter and cashier jobs[.]" (Doc. #146). Wal-Mart argues that the EEOC's Motion for Reconsideration fails to meet the standards set forth under Federal Rule of Civil Procedure 59(e) ("Rule 59(e)") and Federal Rule of Civil Procedure 60(b) ("Rule 60(b)"). (Doc. #147).

**II.     Legal Standards**

*A. Summary Judgment*

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, it is the court's obligation to view the facts in the light most favorable to the adverse party and to allow the adverse party the benefit of all reasonable inferences to be drawn from the evidence. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Inland Oil and Transport Co. v. United States, 600 F.2d 725, 727-28 (8th Cir. 1979). Summary judgment is appropriate against a party who fails to make a showing sufficient

6

to establish that there is a genuine issue for trial about an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

*B. Motion for Reconsideration*

The EEOC fails to describe the basis under which it seeks relief. Therefore, this Court has two options–to construe the Motion under Rule 59(e), as a motion to alter or amend the judgment, or under Rule 60(b), as a motion for relief from judgment for mistake or other reasons. *See* Sanders v. Clemco Industries, 862 F.2d 161, 168 (8th Cir. 1988).

The purpose of Rule 59(e) is to make clear that district courts possess the power to correct their own mistakes in the period immediately following the entry of a judgment. White v. New Hampshire Dept. of Employment Sec., 455 U.S. 445, 450 (1982). A party filing a motion to alter or amend judgment under Rule 59(e) must rely on one of the following: (1) an intervening change in controlling law; (2) the availability of new evidence not available previously; or (3) the need to correct a clear error of law or prevent manifest injustice. Randle v. Frank, 1992 U.S. Dist. LEXIS 4635, *1 (W.D. Mo. 1992) (internal citations omitted). A Rule 59(e) motion must be served within ten days from the entry of judgment. Id.

A Rule 60(b) motion must be made "within a reasonable time," and allows a party relief from a final judgment, order, or proceeding when the ground asserted is: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud, misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable

7

that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. Id.; Sanders, 862 F.2d at 169.

A motion under Rule 59(e) tolls the running of the 30 days to appeal the judgment, whereas a motion under Rule 60(b) does not. Sanders, 862 F.2d at 168-169. Because the EEOC filed the instant Motion within ten days after the entry of the order granting summary judgment, this Court will treat this as a motion under Rule 59(e)[2] for purposes of appeal. *See* Id.

**III.   Analysis**

The EEOC argues that, in granting Wal-Mart's motion for summary judgment, the Court made statements that reflect a misunderstanding of the record. (Doc. #146). First, the EEOC's Motion "seeks to clarify how Bradley's condition affects his manual dexterity," specifically as it relates to the Court's order granting summary judgment, which stated that Bradley "suffers from spastic diplegia in his hands.'" (Doc. #145). The EEOC suggests that this Court relied on Wal-Mart's uncontroverted statement that Bradley "has had spastic diplegia with lesser problems with his hands since birth" in reaching the conclusion that Bradley's spastic diplegia affected his hands. (Doc. #146). The EEOC points out in the instant Motion that Bradley's spastic diplegia affects his legs, not his hands. Id. The condition's only effect on Bradley's upper body, the EEOC argues, is that his fourth and fifth fingers tend to move together instead of separately. Id.

The Court indeed misinterpreted the confusing statement that Bradley "has had spastic diplegia with lesser problems with his hands since birth," to mean that Bradley's spastic diplegia affected his hands.

---

[2]The Court notes, however, that the EEOC's Motion for Reconsideration is insufficient to meet the standards under either Rule 59(e) or Rule 60(b).

8

However, the Court's grant of summary judgment in no way hinged on the finding that Bradley had spastic diplegia in his hands. Rather, this Court granted summary judgment because Bradley failed to present evidence sufficient to create a genuine issue of material fact regarding whether he was qualified to perform the essential functions of the jobs for which he applied.

The EEOC further argues that, in finding that Bradley failed to present sufficient evidence that he was qualified to perform the essential functions of the people greeter and cashier jobs, this Court essentially misunderstood the entire record. (Doc. #146). The EEOC now "seeks to clarify the factual record with respect to Bradley's ability to perform the essential functions of the people greeter and cashier jobs[.]" Id. The EEOC directs the Court's attention to various places in the record that the EEOC claims "further establish that Bradley is able to perform the essential functions of [the people greeter and cashier] jobs." Id. However, this Court already considered the evidence in the record in ruling on Wal-Mart's motion for summary judgment. The EEOC has failed to show an intervening change in controlling law, the availability of new evidence not available previously, or the need to correct a clear error of law or prevent manifest injustice. Instead, the EEOC's Motion merely rehashes facts and evidence the Court already considered in granting summary judgment. Consequently, the EEOC's Motion for Reconsideration is insufficient to meet the standards of Rule 59(e).

Further, although the Court finds no error with its previous order granting summary judgment on the basis of the EEOC's failure to present sufficient evidence of Bradley's ability to perform the essential functions of the people greeter and cashier jobs, the Court notes that summary judgment is also appropriate in this case because the EEOC has failed to present any evidence that Wal-Mart's stated reasons for not hiring Bradley were a pretext for discrimination.

9

Claims of discrimination under the ADA are analyzed under the McDonnell Douglas burden shifting framework. Fenney v. Dakota, Minn. & E.R.R. Co., 327 F.3d 707, 712 (8th Cir. 2003). Under this structure, the plaintiff must first establish a prima facie case based on disability. Id. If the plaintiff makes out a prima facie case, the burden of production shifts to the defendant to put forth evidence that its actions were based on legitimate, non-discriminatory reasons. Kiel v. Select Artificials, Inc., 169 F.3d 1131, 1135 (8th Cir. 1995). If the defendant puts forth such evidence, the burden shifts back to the plaintiff to produce evidence demonstrating that the defendant's stated reasons are pretexts for discrimination. Id.

Evidence to rebut a defendant's legitimate, nondiscriminatory reason must "pass beyond speculation into the realm of reasonable inference." Edmund v. MidAmerican Energy Co., 299 F.3d 679, 685 (8th Cir. 2002). The evidence must be that from which a reasonable jury could conclude that Wal-Mart's reasons for its decision not to hire Bradley were a pretext for discrimination. *See* Ottman v. City of Independence, Missouri, 341 F.3d 751, 758 (8th Cir. 2003). The EEOC may use instances of disparate treatment to support a claim of pretext. *See* Harvey v. Anheuser-Busch, 38 F.3d 968, 972 (8th Cir. 1994). However, the test for whether individuals are similarly situated to warrant a comparison is a "rigorous" one. Saulsberry v. St. Mary's Univ., 318 F.3d 862, 867 (8th Cir. 2003), *quoting* Conquist v. City of Minneapolis, 237 F.3d 920, 926 (8th Cir. 2001).

In this case, Wal-Mart states that it did not hire Bradley because of his limited availability, his work history, and his lack of retail experience. (Doc. #125). The only evidence put forth by the EEOC on this issue is a comparison of a handful of applicants who were hired by Wal-Mart. (Doc. #131). However, those applicants are not substantially similar to Bradley, as required by the law. For example, none of the applicants had such limited availability of 4:00 p.m. to 10:00 p.m., like Bradley, unless the applicants were

10

high school students or intended Wal-Mart to be a second job; most applicants had previous work experience with the general public; many applicants had previous cashier and/or retail experience; several had work experience particular to the job for which they were applying; the vast majority were high school students with completely open availability but for their high school class schedules (which, by law, had to be honored by Wal-Mart); several were college students with completely open availability but for their class schedules; several applied specifically for part time work. (Doc. #131, Attach. 1, Exh. #19 & #20). The EEOC wholly fails to refute defendant's proffered reasons for not hiring Bradley or explain how these individuals are similarly situated to Bradley.

Even if the EEOC had put forth sufficient evidence to create a genuine issue of material fact regarding Bradley's ability to perform the essential functions of the people greeter and cashier jobs, the EEOC has put forth absolutely no evidence from which a reasonable factfinder could infer that Wal-Mart's reasons for not hiring Bradley were a pretext for discrimination.

## CONCLUSION

The EEOC's Motion for reconsideration merely rehashes facts and attempts to resurrect evidence the Court already evaluated in granting summary judgment. As such, the EEOC fails to meet the standards under Rule 59(e) and the Court finds no error with its previous Order. Further, in addition to the EEOC's failure to put forth evidence in support of an essential element of its prima facie case, the EEOC has also failed to put forth one scintilla of evidence from which a reasonable factfinder could conclude that Wal-Mart's reasons for not hiring Bradley were a pretext for discrimination. Accordingly, the EEOC's Motion for Reconsideration is DENIED.

11

**IT IS SO ORDERED.**

                                                                          /s/ Gary A. Fenner
                                                                          GARY A. FENNER, JUDGE
                                                                           United States District Court

DATED:    December 21, 2005